**Saundra LLOYD, Plaintiff,**

v.

**WABC–TV and Capital Cities/ABC Inc., Defendants.**

**No. 93 Civ. 7648 (KTD).**

United States District Court, S.D. New York.

March 30, 1995.

Joseph Fleming, New York City, for plaintiff Saundra Lloyd.

Proskauer Rose Goetz & Mendlesohn, New York City (Kathleen M. McKenna, Pamela Davis–Clarke, of counsel), for defendants WABC–TV and Capital Cities/ABC, Inc.

### *MEMORANDUM & ORDER*

KEVIN THOMAS DUFFY, District Judge:

On October 23, 1992, Plaintiff Saundra Lloyd, an African–American, filed an employment discrimination charge against Defendants WABC–TV and Capital Cities/ABC, Inc. (collectively "ABC") with the New York District Office of the Equal Employment Opportunity Commission ("EEOC"). The EEOC issued a right-to-sue letter dated August 10, 1993, in which it concluded that Defendants had not violated Title VII and dismissed Plaintiff's charge. Plaintiff subsequently filed the present complaint in this court on November 5, 1993. The complaint alleges violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e–5, *et seq.*, in that Plaintiff was required to work in an environment where bias and prejudice existed against African Americans; that this discriminatory atmosphere resulted in her being harassed and treated poorly at work; that she was denied the benefits of seniority and promotion afforded

to her co-workers; and that she was repeatedly denied job titles and compensation commensurate with her duties. Plaintiff requests this court to grant an award of back pay as compensation for the discrepancy between her income and that of her Caucasian colleagues; damages for pain and suffering; punitive damages; attorney's fees; and the costs and disbursements of this action.[1] On January 18, 1994, Defendants brought the present motion for summary judgment in favor of Defendants and for the dismissal of Plaintiff's Title VII claims.

For the following reasons, Defendants' motion is granted.

## I.

Plaintiff is an African American woman who has been employed by Defendants since 1981. At present, Plaintiff serves as the New Jersey Bureau Manager/Researcher for the "Eyewitness News" television program at WABC–TV. Prior to obtaining her present position in 1987, Plaintiff had held the positions of Desk Assistant and Researcher. Throughout her career at ABC, Plaintiff has received positive performance evaluations. Among her academic credentials, Plaintiff lists a Bachelor of Arts degree in journalism from Bernard Baruch College of the City University of New York, and also a certification in the Video Technology Training Program at the Institute of New Cinema Artists in New York City.

Plaintiff alleges six incidents involving discrimination. In February 1983, Plaintiff submitted to her employers a proposal for a television program. Although the then-News Director praised the proposal, the station rejected Plaintiff's program. However, in July 1984, ABC produced and aired a show allegedly resembling the one Plaintiff had proposed.

In the remaining five incidents, Plaintiff alleges that Defendants denied her job training and/or promotions, instead bestowing these benefits upon Caucasian employees. In 1986, a white male Desk Assistant was given training for and subsequently promoted to the position of "Eyewitness News" Engineer rather than Plaintiff. In 1987, a white female Researcher was given training for and subsequently promoted to the positions of Assignment Editor and Writer, and one year later was promoted to the position of Producer, while Plaintiff received no comparable training or advancement. Also in 1987, Plaintiff was transferred to Defendants' New Jersey office with the understanding that she was to serve as the Bureau Chief, only to discover upon her arrival that a white male had been hired as Bureau Chief instead. In July 1991, a white female was promoted to the position of Writer rather than Plaintiff.

Finally, despite Plaintiff's requests to be informed of and considered for more advanced positions, a white male was hired as Assignment Editor (Newswriter)[2] in September 1992. The individual promoted had worked part-time as a freelance Newswriter at ABC for at least one year, and before that had been employed by one of Defendants' competitors—the CBS network and WCBS/TV (collectively "CBS")—for fourteen years. While working for CBS, this individual at various times held the positions of Producer, Editor, Newswriter, and Assignment Editor.

## II.

### DISCUSSION

1. Summary Judgment Standard

■ Summary judgment is appropriate only where the moving party demonstrates that there exists no genuine issue of material fact, and that the moving party is entitled to summary judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). In determining

---

1. Plaintiff also requests, albeit improperly given the nature of the other remedies sought, a declaratory judgment to the effect that she has been discriminated against in the terms and conditions of her employment.

2. Plaintiff refers to the position both as "Assignment Editor" and "Newswriter," while Defendants refer to it as "Newswriter." Regardless of the proper title, it is obvious from their moving papers that all parties are referring to the same position which was filled in 1992.

whether a genuine issue of material fact exists, the evidence must be construed and all inferences drawn in favor of the non-moving party. *Cable Science Corp. v. Rochdale Village, Inc.*, 920 F.2d 147, 151 (2d Cir.1990); *Williams v. Smith*, 781 F.2d 319, 323 (2d Cir.1986).

The moving party bears the initial responsibility of demonstrating the absence of a genuine issue of material fact. *Id.* A non-moving party can defeat a properly asserted summary judgment motion by demonstrating the existence of a material issue of fact necessitating a trial on the merits. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Williams*, 781 F.2d at 323. To sustain this burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Williams*, 781 F.2d at 323 ("Mere conclusory allegations or denials will not suffice.") In turn, the moving party may discharge its burden by "pointing out to the district court—that there is an absence of evidence to support the non-moving party's case." *Celotex*, 477 U.S. at 325, 106 S.Ct. at 2554. Even where evidence is offered, summary judgment may still be granted if that evidence is not significantly probative. *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2510–11.

In the end, however, the inquiry on a summary judgment motion is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. at 2512.

### 2. Timeliness in Filing Charges

In New York state, a complainant must file a discrimination charge under Title VII with the EEOC within 300 days of the alleged discriminatory act. 42 U.S.C. § 2000e–5(e); *Wilkinson v. New York Tel. Co.*, No. CV–91–3085, 1995 WL 87257, at *2 (E.D.N.Y. Feb. 16, 1995). Under ordinary circumstances, the failure to bring a timely charge with the EEOC will bar a federal civil action based on racial discrimination. *Id.* (citing *Miller v. Int'l Tel. and Tel. Corp.*, 755 F.2d 20, 23 (2d Cir.), *cert. denied*, 474 U.S. 851, 106 S.Ct. 148, 88 L.Ed.2d 122 (1985)).

Plaintiff filed her discrimination charge on October 23, 1992. Three hundred days prior to the filing date falls on December 27, 1991. Therefore any acts of discrimination which Defendants allegedly committed in violation of Plaintiff's rights prior to December 27, 1991 are untimely and may no longer be pursued under Title VII. Plaintiff's claims which are so barred include those arising from the rejection of her television proposal in 1983; the failure to promote her to "Eyewitness News" Engineer in 1986; the failure to promote her to Assignment Editor and Writer (and later to Producer), and also the failure to promote her to New Jersey Bureau Chief,[3] both of which occurred in 1987; and the failure to promote her to Writer in July 1991.

Plaintiff attempts to circumvent this bar by referring to the "continuing violation" doctrine. To establish a continuing violation, a plaintiff must demonstrate a series of related acts where at least one of the acts occurred within the limitations period. *Drayton v. Veterans Admin.*, 654 F.Supp. 558, 567 (S.D.N.Y.1987). Alternatively, a plaintiff may demonstrate that the defendant had established a discriminatory system prior to and during the limitations period. *Id.* However, the continuing violation doctrine is disfavored in this Circuit, and will be applied only upon a showing of compelling circumstances. *Blesedell v. Mobil Oil Co.*, 708 F.Supp. 1408, 1415 (S.D.N.Y.1989).

Plaintiff has provided no evidence which might tend to show that the denials of promotions were related. Rather Plaintiff relies solely upon the fact that over the term of her employment, she did not receive certain promotions, which instead went to Caucasians. In fact, the evidence tends to illustrate that

---

**3.** This could be interpreted as either a failure to promote Plaintiff to the position or as a promotion followed shortly thereafter by a demotion from the position. Neither interpretation alters the determination on the timeliness issue, though.

the incidents were not related. For instance, while responsibility for the 1991 and 1992 decisions rested with the same two individuals, each of the four prior determinations were made by different individuals acting independently. (Ressy Aff. ¶ 9(a)–(f)); *cf. Scott v. Federal Reserve Bank of New York,* 704 F.Supp. 441, 450 (S.D.N.Y.1989) (refusing to apply continuing violation exception in part because decision to discharge made by four individuals in one division, while decisions regarding other claims made by management of another division). Moreover, these six determinations were of differing natures, varying from the alleged misappropriation of an idea for a television program to denials of training opportunities to denials of promotions.

"[M]ere continuity of employment, without more, is insufficient to prolong the life of a cause of action for employment discrimination." *Drayton,* 654 F.Supp. at 567 (quoting *Delaware State College v. Ricks,* 449 U.S. 250, 257, 101 S.Ct. 498, 504, 66 L.Ed.2d 431 (1980)). Likewise, "past incidents of failure to promote do not constitute a continuing violation." *Blesedell,* 708 F.Supp. at 1415; accord, *Samuel v. Merrill Lynch Pierce Fenner & Smith,* 771 F.Supp. 47, 49 (S.D.N.Y. 1991). Therefore, Plaintiff cannot claim an exemption from the statutory limitations period on the unsupported allegation that the promotion denials constitute a series of related discriminatory acts. *Cf. Blesedell,* 708 F.Supp. at 1415–16 (refusing to find continuing violation where no evidence of relationship among denials of promotions other than that incidents involved same employee).

■ However, Plaintiff also contends that the various supervisors who made the allegedly discriminatory promotion decisions "represented and implemented the sole managerial and personnel policy of the corporate Defendants." (Pl.'s Mem.Opp.Mot.Summ.J. at 10). According to the complaint, this policy consisted of establishing and maintaining "separate lines of seniority for African American and other employees ... limiting the employment and promotional opportunities of African American employees because of race or color." (Compl. at 7 ¶ 19).

■ Where there has been a continuous pattern and policy of discrimination in employment practices, the limitations period will be measured from the date of the last discriminatory act in furtherance thereof. *Gomes v. Avco Corp.,* 964 F.2d 1330, 1333 (2d Cir.1992) (quoting *Miller,* 755 F.2d at 25). District courts in this Circuit are split over whether a plaintiff must show that her employer maintained a class-wide policy of discrimination, or merely engaged in a continuous and ongoing pattern of discrimination against the plaintiff individually. *Compare Bradley v. Consolidated Edison Co. of New York, Inc.,* 657 F.Supp. 197, 204 (S.D.N.Y. 1987), *with Cosgrove v. Sears, Roebuck and Company,* No. 81 CIV 3482, 1990 WL 106797, at *6 (S.D.N.Y. July 27, 1990). Plaintiff alleges that she was the victim of discriminatory practices, but she sets forth no factual evidence from which it may be inferred that Defendants continuously discriminated against her individually because she is an African American. Nor does Plaintiff present any evidence whatsoever that Defendants engaged in class-wide discrimination against other African American employees similarly situated. As a result, under either theory, Plaintiff has not established a continuing violation, and the 300 day statute of limitations applies. Summary judgment in favor of Defendants is therefore appropriate with regard to the five incidents alleged to have occurred prior to December 27, 1991.

### 3. Three–Part Inquiry for Title VII Claims

■ Plaintiff's only remaining claim is that in September 1992, she was discriminated against when Defendants hired a Caucasian male as Assignment Editor (Newswriter) instead of Plaintiff. Initially, the complaining plaintiff has the burden of demonstrating a prima facie case of racial discrimination. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). Once a prima facie case has been made, the employer must present some legitimate, non-discriminatory reason for its decision. *Id.* Should the employer succeed in this showing, the complaining plaintiff must demonstrate that the employer "intentionally discriminated against him" on

the basis of race. *St. Mary's Honor Center v. Hicks,* — U.S. ——, ——, 113 S.Ct. 2742, 2749, 125 L.Ed.2d 407 (1993) (quoting *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 253–54 n. 6, 101 S.Ct. 1089, 1093–94 n. 6, 67 L.Ed.2d 207 (1981)). The plaintiff may satisfy this burden by showing intentional discrimination by the employer, or by discrediting the employer's proffered reason for its decision in conjunction with sufficient facts establishing the elements of the prima facie case. *Id.*

 To establish a prima facie case of discrimination under Title VII, a complaining plaintiff may make the following four-part showing: (1) that she belongs to a protected class; (2) that she was qualified and applied for a job for which the employer was seeking candidates; (3) that the employer denied her the position despite her qualifications; and (4) that after this denial, the employer continued to solicit applicants for the position who had comparable qualifications to the plaintiff. *McDonnell Douglas Corp.,* 411 U.S. at 802, 93 S.Ct. at 1824. These four elements will not apply identically to all factual scenarios, and therefore represent only a flexible guideline for how a plaintiff may chose to establish a prima facie case. *Id.* at 802 n. 13, 93 S.Ct. at 1824 n. 13; *Burdine,* 450 U.S. at 253–54 n. 6, 101 S.Ct. at 1094 n. 6. The ultimate burden of demonstrating intentional discrimination rests at all times with the complaining plaintiff, though. *Hicks,* — U.S. at ——, 113 S.Ct. at 2749; *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093.

 Plaintiff has established a prima facie case of racial discrimination. Plaintiff belongs to a protected class. In addition, plaintiff appears at least minimally qualified for the Assignment Editor (Newswriter) position, having a degree in journalism and a certificate in video technology, as well as having had over ten years of experience in Defendants' employ at the time of the alleged incident. Despite Plaintiff's qualifications, Defendants denied her the position, instead giving it to a Caucasian male.

 The only general element of the prima facie case that is in dispute is whether Plaintiff actually applied for the Assignment Editor (Newswriter) position in 1992. Defendants expressly state that they do not dispute the fact that Plaintiff formally applied for the position in November 1991. (Def.'s Reply Mem.Supp.Mot.Summ.J. at 8). Nor do they dispute the fact that Plaintiff orally expressed her interest in such a position several times thereafter to the individual responsible for hiring for that position. (*Id.*) During August 1992, Plaintiff noticed that the position of Newswriter had been posted in Defendants' Job Listing. In a memorandum date November 6, 1992, Plaintiff reiterated her interest in this position, but by then the position had already been filled. Defendants allege that Plaintiff never formally applied for the position when the opening was posted in 1992,[4] and therefore has failed to prove an "essential element" of her prima facie case. (Def.'s Reply Mem.Supp.Summ.J. at 9).

 Contrary to Defendants' argument, the *McDonnell Douglas* elements constitute only a flexible guideline, and no element is "essential." *See McDonnell Douglas,* 411 U.S. at 802 n. 13, 93 S.Ct. at 1824 n. 13; *Dister v. Continental Group, Inc.,* 859 F.2d 1108, 1112 (2d Cir.1988); *Meiri v. Dacon,* 759 F.2d 989, 996 (2d Cir.), *cert. denied,* 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985) (quoting *Furnco Constr. Corp. v. Waters,* 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978)). Moreover, it may be that Defendants did not generally require formal applications where candidates had already directly expressed strong interest in certain positions, or they might have made exceptions for such candidates in the past. Either in conjunction with the preceding notions or independently, if Plaintiff had been led to believe that she would be informed of and/or considered for any such job openings based upon her formal 1991 application and subsequent reiterations of her interest, then Defendants might have led Plaintiff to refrain from formally applying when the position became available in 1992. Thus, Plaintiff has raised the factual issue of whether she made a sufficient application for the position.

---

4. Forty individuals formally applied for the position. (Ressy Aff. Ex. H).

To satisfy its production burden and rebut the plaintiff's prima facie case, an employer need only offer a legitimate, non-discriminatory reason for why the plaintiff was rejected or another individual was preferred, but the employer need not convince the court that its decision was actually motivated by that reason. *Burdine,* 450 U.S. at 254, 101 S.Ct. at 1094; *Meiri,* 759 F.2d at 996. The employer need only create a genuine issue of fact pertaining to whether it discriminated against the plaintiff. *Burdine,* 450 U.S. at 254–55, 257, 101 S.Ct. at 1094, 1095. However, the proffered reason must be clear and fairly specific. *Id.* at 258, 101 S.Ct. at 1096; *Meiri,* 759 F.2d at 997.

According to Defendants, the individual hired to fill the Newswriter position had worked for CBS for fourteen years in various positions, including Producer, Editor, Newswriter, and Assignment Editor. On the other hand, Plaintiff's qualifications at the time included her journalism degree and video technology certificate, the fact that she received positive evaluations each of the four times that she took Defendants' "Writer's Test" (Lloyd Aff. ¶ 8), and her twelve years of employment with Defendants. Thus, the individual hired actually had more years of experience in the industry (approximately 15 years) than did Plaintiff (approximately 12 years), including experience at the particular job being offered.

It would not be illogical for Defendants to have concluded that, despite having only worked for Defendants part-time for approximately one year, the other candidate possessed superior qualifications for the Newswriter position than Plaintiff.[5] Thus, Defendants have offered a legitimate, non-discriminatory reason as to why Plaintiff was rejected and/or another candidate was preferred for the Newswriter position, and in so doing have discharged their production burden. *See Miller v. Swissre Holding, Inc.,* 771 F.Supp. 56, 59 (S.D.N.Y.1991) (finding superior qualifications of Caucasian candidate legitimate business reason for employment de-

cision warranting judgment for employer on relevant claims).

Because Plaintiff retains the burden of persuasion, she must provide evidence from which a trier of fact could reasonably infer that Defendants engaged in racial discrimination against her. *See Hicks,* —— U.S. at ——, 113 S.Ct. at 2749; *Sorlucco v. New York City Police Dep't,* 888 F.2d 4, 7 (2d Cir.1989); *Donaldson v. Merrill Lynch & Co.,* 794 F.Supp. 498, 505 (S.D.N.Y.1992). A plaintiff may satisfy this burden by either demonstrating that the employer likely possessed a discriminatory motive, or by discrediting the employer's proffered reason. *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095.

Plaintiff has offered no facts which might give rise to an inference of either intentional racial discrimination or an inference that Defendants' stated reason for the hiring of another candidate instead of Plaintiff is merely a pretext masking intentional racial discrimination. Thus, Plaintiff's evidence raises no inference of racial discrimination and casts no doubt upon Defendants' stated reason for making their hiring decision. Therefore, summary judgment in favor of Defendants on the September 1992 hiring determination is warranted.

### III.

### CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment on Plaintiff's Title VII claims is hereby granted.

SO ORDERED.

---

**5.** It should be noted that Defendants need not show that the other candidate was more qualified than Plaintiff. Under Title VII, "the employer has discretion to choose among equally qualified candidates, provided the decision is not based upon unlawful criteria." *Burdine,* 450 U.S. at 259, 101 S.Ct. at 1097.