Cyrus SAMIMY, Plaintiff,

v.

CORNELL UNIVERSITY, Defendant.

No. 95–CV–6177L.

United States District Court,
W.D. New York.

April 23, 1997.

Jeffrey Wicks, Bansbach, Zoghlin & Asandrov, Rochester, for Plaintiff.

Wendy E. Tarlow, Valerie L. Cross, Ithaca, for defendant.

## DECISION AND ORDER
LARIMER, Chief Judge.

### INTRODUCTION

This is an ethnic discrimination case arising from plaintiff Dr. Cyrus Samimy's ("Samimy") employment with Defendant Cornell University ("Cornell") from 1979 through February 1995. Samimy contends that despite his superior qualifications and satisfactory performance, Cornell failed to promote him, and ultimately terminated him, based upon improper discriminatory motives.

In June of 1993, following what he perceived to be an unsatisfactory review, Samimy filed a complaint with the New York

State Division of Human Rights ("DHR"). The complaint was cross-filed with the Equal Employment Opportunity Commission ("EEOC"). On February 3, 1995, Samimy's final appointment with Cornell ended and was not renewed. On January 23, 1995, the EEOC issued a "right to sue" letter. On May 8, 1995, Samimy filed his complaint in this Court alleging violations under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., and New York's Human Rights Law, Executive Law § 290, et. seq.[1]

Cornell now moves for summary judgment on the grounds that: (1) Samimy's Title VII claim exceeds the scope of his EEOC charge or is otherwise time-barred; and (2) Samimy has failed to establish a prima facie case of discrimination based on national origin. For the reasons set forth below, Cornell's motion for summary judgment is granted.

### BACKGROUND

**Samimy's EEOC Complaint**

At all relevant times, Samimy was employed by Cornell at its New York Agricultural Experiment Station located in Geneva, New York. Samimy holds a Bachelor of Science in agronomy, a Master's degree in crop physiology and a Ph.D. in plant physiology. He was employed through a series of three-year or one-year appointments by Cornell as a Research Assistant. He is of Iranian descent and has an Iranian accent. From 1979 to 1981, he was employed as a Research Support Specialist (a non-academic position). In 1981, he applied for and received a position as a Research Associate (an academic position).

Sometime in 1990, Samimy was assigned to work in the lab of Dr. Thomas Bjorkman ("Bjorkman"). Although he retained his Research Associate classification and his existing salary, Samimy was placed in a position generally reserved for a Research Support Specialist, a lower ranking position.

In March 1993, Samimy had his 1992 annual performance review with Bjorkman and the Department Chair, Hugh C. Price ("Price"). Samimy contends that he was

---

1. Samimy also alleged a breach of contract claim but he subsequently withdrew that claim.

evaluated not as a Research Associate, but as a Research Support Specialist. Samimy received a letter, dated April 12, 1993, in which Price states, "[m]uch of the conflict appears [sic] comes from your having the rank of Research Associate with an appointment in a Research Support Specialist position." (Samimy Exhibits, Exhibit AA at p. 9.) Samimy apparently felt that his reputation was being impugned by this statement.

In June, 1993, Samimy filed a charge of discrimination with the EEOC. There, he states:

1. I am of Iranian National Origin/Ancestry. I believe I have been denied equal terms, conditions and privileges of employment because of my national origin/ancestry.

2. I have been employed by the respondent since 1979. I have had a series of three year contracts, which have been renewed based on available funding and program objectives. My current contract ends on February 5, 1994. I am a Research Associate III.

3. On March 25, 1993 I had my 1992 annual performance evaluation with Thomas Bjorkman, Assistant Professor, and Hugh C. Price, Professor and Chair of the Department of Horticultural Sciences. During this meeting I was informed that I was being perceived and evaluated as a Research Support Specialist, a lower ranking position, which I held when I was initially hired.

4. On information and belief, because I am being perceived and evaluated as a Research Support Specialist, my professional career is being damaged and I am being denied opportunities for professional development. My achievements are not being recognized, and my self-esteem is being damaged.

(Cornell Exhibits, Exhibit 7.)

### Samimy's Federal Action

On April 17, 1995, Samimy filed his complaint with this Court. In the federal complaint, he lists several employment decisions by his supervisors from 1988 to his termination in 1995 which he apparently contends were motivated by discrimination. For example, he contends that on September 23, 1988, he was improperly denied a requested promotion. The complaint also contains a general allegation that Samimy was "consistently denied promotions" and was "discouraged from applying for promotion." (Samimy Exhibits, Exhibit A at p. 3.)

Samimy contends that he applied for a Vegetable Crop Physiology faculty position then being advertised at Cornell. He alleges that he had received good performance reviews and was qualified for the position. However, in July 1990, Cornell instead hired Bjorkman, a white, American male, who Samimy alleges had no horticultural or supervisory experience.

Samimy next reiterates the allegation contained in his EEOC complaint—that during his 1992 performance evaluation he was told that he was being perceived and evaluated as a lower ranked Research Support Specialist.

Finally, Samimy contends that in January 1994, he was told that his Research Associate appointment would expire and that a lower ranked nonacademic position would be made available to him. He contends that this offer was later withdrawn and that he was told that his current position would terminate on February 3, 1995.

### DISCUSSION

#### Summary Judgment Standards

A party is entitled to summary judgment under Federal Rule of Civil Procedure 56 when there is no disputed material issue of fact and judgment in favor of the moving party is appropriate as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party demonstrates that there is no evidence to support the nonmoving party's case, the nonmoving party must come forward, and by "affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,'" identify specific facts demonstrating the existence of a genuine issue for trial. *Id.* at 324, 106 S.Ct. at 2553. Although any ambiguity must be resolved and all inferences viewed in favor of the

nonmoving party, "[w]hen no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Gallo v. Prudential Residential Services Ltd. Partnership*, 22 F.3d 1219, 1223–224 (2d Cir.1994).

## I. The Scope Of Samimy's EEOC Complaint

■ The first problem with Samimy's federal complaint is that it is far more expansive than his single EEOC complaint. Giving Samimy the benefit of a liberal interpretation of his 1993 filing with the EEOC, it appears that the only job action at issue related to his 1992 annual performance evaluation which occurred in March 1993. This matter is set forth in Samimy's federal complaint, but there was never any EEOC filing relating to any of the other matters set forth in Samimy's federal complaint. Therefore, Cornell contends that Samimy's Title VII complaint must be dismissed to the extent it exceeds the scope of his EEOC charge. I agree.

As a general rule, "[a] district court only has jurisdiction to hear Title VII claims that either are included in an EEOC charge or are based on conduct subsequent to the EEOC charge which is 'reasonably related' to that alleged in the EEOC charge." *Butts v. City Of New York Dept. Of Housing Preservation and Dev.*, 990 F.2d 1397, 1404 (2d Cir.1993) (citations omitted). Thus, the question presented here is whether the alleged discriminatory conduct that occurred after the filing of the EEOC charge—Samimy's demotion and termination—is reasonably related to the original 1993 EEOC filing.[2]

Concerning post-EEOC filing matters, the Second Circuit has identified three situations (only two of which are relevant here), where claims not alleged in an EEOC complaint are sufficiently related to the EEOC charge to allow the plaintiff to go forward. *See id.* at 1402. The first situation is "essentially an allowance of loose pleading." *Id.* Inherent in the court's reasoning is the recognition that many EEOC charges are filled out by employees without the benefit of counsel. Thus, the Second Circuit allows claims "to be brought in a civil action where the conduct complained of would fall within the 'scope of he EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.'" *Id.* (citations omitted).

In his EEOC complaint, Samimy contends that he learned during his 1992 annual performance review (held on March 25, 1993) that he is "being perceived and evaluated as a Research Support Specialist, a lower ranking position...." He further contends that because he is being improperly "perceived" as a Research Support Specialist, his career is being damaged and he is "being denied opportunities for professional development." (Cornell Exhibits, Exhibit 7.) It is clear, therefore, that the EEOC charge only relates to a single alleged incident of discrimination—the 1992 annual performance review.

Nevertheless, Samimy contends that he should be allowed to prosecute claims which occurred after the 1992 performance evaluation. He asserts that his use of the present tense in the charge—"I am being perceived and evaluated ..., my professional career is being damaged and I am being denied opportunities ..."—is sufficient to encompass any alleged post-filing acts of discrimination. I disagree. A common sense reading of the charge makes clear that these statements are directly linked to Samimy's performance review. Given the specificity of the charge, a reasonable EEOC investigation would begin and end with this review. *See Choi v. Chemical Bank*, 939 F.Supp. at 312 (S.D.N.Y.1996) (where EEOC complaint contained allegation regarding a specific instance of discrimination, the district court refused to hold that alleged subsequent similar incidents would fall within the scope of the EEOC investigation concerning the initial claim); *see also Campbell v. Grayline Air Shuttle, Inc.*, 930 F.Supp. 794, 800 (E.D.N.Y.1996) (where plaintiff alleged only a "functional demotion" in her administrative charge, district court refused to hear later claims of decreased work hours and denial of office space).

2. Samimy made no supplemental filing with the EEOC following the June 1993 filing.

Further, Samimy's general charge that he believes he has been discriminated against due to his national origin/ancestry is too vague "to alert the EEOC to investigate the subsequent conduct." *See Alfano v. Costello,* 940 F.Supp. 459, 468 (N.D.N.Y.1996). "Were [this Court] to permit such vague, general allegations, quite incapable of inviting a meaningful EEOC response, to define the scope of the EEOC investigation and thereby predicate subsequent claims in the federal lawsuit, such allegations would become routine boilerplate and Title VII's investigatory and mediation goals would be defeated." *Butts,* 990 F.2d at 1403 (citation omitted).

■ Finally, Samimy contends the alleged post-charge discriminatory conduct falls within the third category of "reasonably related" claims enunciated in *Butts.* Under this third exception to the exhaustion of remedies requirement, the district court may hear claims of subsequent discrimination where the alleged incidents of discrimination were "carried out in precisely the same manner alleged in the EEOC charge."[3] *Id.* at 1403. The relevant inquiry is "whether 'the EEOC would have had the opportunity to investigate, if not the particular discriminatory incident, the method of discrimination manifested in prior charged incidents.'" *Alfano v. Costello,* 940 F.Supp. at 469, quoting *Butts,* 990 F.2d at 1403.

In his EEOC charge, Samimy complains that he was being improperly perceived and evaluated at a lower level than his actual job classification and that as a result, he was being denied job opportunities and his career was being damaged.[4] In his federal complaint he alleges that following this evaluation, he was offered a lower position than the one he currently held, that the offer was withdrawn, and that he was later terminated. Given the narrow scope of the EEOC charge (limited to a discrete incident, the 1992 performance evaluation), I am not convinced that the alleged subsequent acts of discrimi-

nation can be said to have been "carried out in precisely the same manner alleged in the EEOC charge." *See Butts,* 990 F.2d at 1403; *see also Almendral v. New York State Office Of Mental Health,* 743 F.2d 963, 967 (2d Cir.1984) (district court had jurisdiction to hear allegations of federal complaint where subsequent acts were "essentially the same as the earlier allegedly wrongful conduct contained in the EEOC complaint"). The incidents were different, they occurred at different times, they involved different decision-makers at Cornell, and they cannot be said to be related for purposes of complying with the EEOC filing requirement.

Although I would dismiss on this ground alone, it is academic because even if I did determine the EEOC complaint to have included subsequent conduct, thus conferring jurisdiction under Title VII, summary judgment would still be granted, on the merits, due to Samimy's failure to establish a prima facie case of national origin discrimination as to those matters.

## II. The Timeliness Of Samimy's EEOC Complaint

There are also problems with the timing of Samimy's EEOC filing. Samimy was required to file his complaint with the EEOC within 300 days of the alleged discriminatory acts. 42 U.S.C. § 2000e–5(e). The filing was timely as to the 1992 performance evaluation but not at all timely as to other matters occurring prior to that time which are set forth in Samimy's subsequent federal complaint.

To the extent Samimy's federal complaint can be read as challenging employment decisions which occurred *before* the EEOC filing in 1993, there is no basis whatsoever to consider those claims in this lawsuit and they must be dismissed.

■ Samimy nevertheless contends that the earlier claims are timely under a continu-

---

**3.** The second type of "reasonably related" claim—one alleging retaliation for the filing of an EEOC charge, *see Butts,* 990 F.2d at 1402—is not relevant here.

**4.** Samimy apparently filed a prior charge with the EEOC in August 1990, but withdrew it after

retaining an attorney. (Samimy's Supplemental Affidavit, Exhibit A, at p. 2.) Clearly, a withdrawn complaint does not "save," for purposes of the statute of limitations, the allegations contained therein.

ing violation theory. Relying on out-of-circuit authority, he appears to contend that Cornell maintained a discriminatory promotion policy up to the time of the filing of his EEOC complaint. Accordingly, he argues that the statutory period had not been triggered and his June 1993 filing with the EEOC was timely as to all the stated claims.

 I disagree. The courts of this circuit do not favor continuing violation arguments. *See Lloyd v. WABC–TV,* 879 F.Supp. 394, 399 (S.D.N.Y.1995); *Blesedell v. Mobil Oil Co.,* 708 F.Supp. 1408, 1415 (S.D.N.Y.1989). "Indeed, only 'compelling circumstances' will warrant application of the exception to the statute of limitations." *Blesedell,* 708 F.Supp. at 1415, citing *LaBeach v. Nestle Co., Inc.,* 658 F.Supp. 676, 687 (S.D.N.Y. 1987). As the Second Circuit explained in *Lambert v. Genesee Hosp.,* 10 F.3d 46, 53 (2d Cir.1993), "[t]he continuing violation exception applies to cases involving specific discriminatory policies or mechanisms such as discriminatory seniority lists, or discriminatory employment tests. However, multiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation." (Citations omitted.)

In the instant case, Samimy has failed to produce any evidence supporting the existence of a discriminatory policy or mechanism. Instead, he simply asserts that his lack of promotion, demotion, and ultimately his termination can only be explained by discriminatory motives. Such "[c]onclusory allegations of discrimination are insufficient to satisfy the requirements of Fed.R.Civ.P. 56(e) that the party opposing summary judgment must set forth specific facts demonstrating that a genuine issue of material fact exists." *McPartland v. American Broadcasting Companies. Inc.,* 623 F.Supp. 1334, 1339 (S.D.N.Y.1985) (citations omitted); *see also Lightfoot v. Union Carbide Corp.,* 110 F.3d 898 (2d Cir.1997) (mere allegation of existence of ongoing policy of discrimination insufficient to avoid summary judgment); *Cornwell v. Robinson,* 23 F.3d 694, 704 (2d Cir.1994) (continuing violation requires

"proof of specific ongoing discriminatory policies or practices"); *Meiri v. Dacon,* 759 F.2d 989, 998 (2d Cir.1985) (conclusory allegations of religious discrimination insufficient to defeat summary judgment).

Further, Samimy identifies no "specific and related instances of discrimination [that were] permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice...." *See Cornwell v. Robinson,* 23 F.3d at 704. Indeed, it is well-settled that the kind of discrete, completed acts complained of by Samimy—demotion, lack of promotion and termination—cannot form the basis of a continuing violation claim. *See e.g., Lightfoot,* 110 F.3d 898; *Choi v. Chemical Bank,* 939 F.Supp. 304, 311 (S.D.N.Y.1996) (discrete instances of non-promotion); *LaBeach v. Nestle Co., Inc.,* 658 F.Supp. at 688 (demotion); *McPartland,* 623 F.Supp. at 1338 (termination); *Malarkey v. Texaco, Inc.,* 559 F.Supp. 117, 121 (S.D.N.Y.1982) (demotion). Thus, Samimy has failed to establish a "continuing violation" and the alleged acts of discrimination that occurred outside the 300–day period are time-barred.

### III. Samimy's Claim Of National Origin Discrimination

Regardless of the procedural and pleading errors discussed above, Samimy's complaint must be dismissed on the merits. There is simply no evidence that race or national origin was a motivating factor in any of the employment decisions about which Samimy now complains.

#### A. Samimy's Prima Facie Case

 A claim of national origin discrimination must be examined under the now familiar burdenshifting analysis established in *McDonnell Douglas Corp., v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and refined in *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) and *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).[5] To establish a pri-

---

5. The elements and burdens of proof are the same for discrimination claims brought pursuant

to Title VII and the New York Human Rights Law. *See Tomka v. Seiler Corp.,* 66 F.3d 1295,

ma facie case, a plaintiff employee must show that: (1) he was a member of a protected group; (2) he was performing his duties in a satisfactory manner; (3) he suffered an adverse employment decision; and (4) the adverse decision was made under circumstances giving rise to a reasonable inference of discrimination. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824; *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093–94. "Establishment of the prima facie case in effect creates a presumption that the employer unlawfully discriminated against the employee." *Burdine*, 450 U.S. at 254, 101 S.Ct. at 1094.

If the plaintiff makes a satisfactory showing, the burden then shifts to the defendant employer to articulate a legitimate nondiscriminatory reason for its conduct. *Id.* If the defendant satisfies its burden, through the admission of competent evidence, the presumption of discrimination is rebutted. The plaintiff must then demonstrate that the proffered reason is merely pretextual. *Id.* at 255–256, 101 S.Ct. at 1094–95. Thus, the plaintiff retains the ultimate burden of persuasion. *Id.* at 256, 101 S.Ct. at 1095.

In the instant case, Samimy contends that throughout his employment with Cornell he was the victim of discrimination based upon his national origin—he is Iranian.[6] As previously indicated, much of the complained-of conduct is no longer actionable The only potentially surviving claims relate to his alleged demotion and termination.[7]

Samimy argues that he was effectively demoted to the position of Research Support Specialist and was ultimately terminated. The record indicates, however, that although Samimy was placed in a position originally designated for a Research Support Specialist, he retained his rank as a Research Assistant (including the attendant salary) until the expiration of his final appointment. Further, he was never fired; his appointment was simply not renewed.

Faced with a motion for summary judgment, Samimy was required to come forward with competent, admissible evidence that he was treated unfairly due to his national origin. Proof of discriminatory motive is critical.... *Zahorik v. Cornell University*, 729 F.2d 85, 91 (2d Cir.1984), quoting *International Bhd. Of Teamsters v. United States*, 431 U.S. 324, 335 n. 15, 97 S.Ct. 1843, 1854 n. 15, 52 L.Ed.2d 396 (1977). The only "evidence" offered in this regard is a 1983 memo which Samimy asserts contains racial insults. There, his supervisor states:

> [i]t appears to me that you have a communications gap with the seed analysts, you have difficulty accepting the degree of independence that women have in our society, and you are reluctant to do physical labor, and you are extremely frustrated because you can't spend 100% of your time in research.[8]

(Cornell Exhibits, Exhibit 11 at p. 200106.) Samimy's contention that the memo evidences discriminatory intent is without any objective basis. No reference to Samimy's national origin is made in the memo whatsoever. The memo deals with Samimy's lack of performance and his problems with female employees. Furthermore, Samimy falls to point to any other alleged instance of racial or ethnic slurs during the length of his employment with Cornell—sixteen years. Further, he has failed to provide any evidence

1304 n. 4 (2d Cir.1995). Accordingly, the Court will address Samimy's Title VII and Human Right's Law claims simultaneously.

**6.** It is undisputed that Samimy is a member of a protected group. There is also evidence to suggest, at least for purposes of avoiding summary judgment, that he was qualified for his position as a Research Assistant.

**7.** My conclusion that Samimy does not make a prima facie case takes into account all of the evidence presented, not just the evidence offered to support the surviving claims.

**8.** This memo is one of two memos sent to Samimy by his supervisor in January 1983. Both severely criticize Samimy's performance as head of the Seed Lab. The supervisor characterizes the basic problem as "one of attitude, motivation, and choice of priorities." (Cornell Exhibits, Exhibit 11, at p. 200107.) The supervisor apparently felt that Samimy was more interested in his own research than running the lab. He also criticized Samimy for his inability to work harmoniously with the staff and his "tendency to antagonize people." (Cornell Exhibits, Exhibit 11, at p. 200107.) Despite Samimy's assertion to the contrary, none of these criticisms appear to be based on Samimy's race.

(statistical or otherwise) that other similarly situated individuals received more favorable treatment.[9]

· Samimy offers only the conclusory allegation that, there being no other reasonable explanation for his treatment, he must have been the victim of discrimination. However, "[t]o allow a party to defeat a motion for summary judgment by offering purely conclusory allegations of discrimination, absent any concrete particulars, would necessitate a trial in all Title VII cases." *Meiri v. Dacon,* 759 F.2d at 998. Such a result cannot be countenanced.

In any event, even assuming arguendo that Samimy has met his prima facie burden, as set forth below, Cornell has presented legitimate non-discriminatory reasons for its actions which Samimy has failed to show are pretextual.

### B. Cornell's Defense

To refute any inference of discrimination, a Title VII defendant need only "articulate—but not prove—a legitimate, nondiscriminatory reason" for its employment decisions. *Dister v. Continental Group, Inc.,* 859 F.2d 1108, 1115 (2d Cir.1988), citing *Burdine,* 450 U.S. at 254–56, 101 S.Ct. at 1094–95. The burden then shifts to the plaintiff to demonstrate by a preponderance of the evidence that the proffered reason is untrue, or more likely motivated by discriminatory intent. *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095; *Dister,* 859 F.2d at 1115.

As a preliminary matter, although the questions of Samimy's demotion and termination were not technically tenure decisions, they involved many of the same factors unique to the university setting. A comparison is therefore appropriate. *See Coser v. Moore,* 739 F.2d 746 (2d Cir.1984) (review of

hiring and promotion practices for academic and nonacademic professionals at SUNY subject to identical level of scrutiny).

█ Employment decisions regarding university professionals (as opposed to factory workers, or other positions requiring only general skills), necessarily involve subjective determinations. *See Zahorik v. Cornell University,* 729 F.2d at 92–93. Absent evidence of improper considerations, "universities are free to establish departmental priorities, to set their own required levels of academic potential and achievement and to act upon the good faith judgments of their departmental faculties or reviewing authorities." *Id.* at 94. Moreover, courts are "understandably reluctant" to substitute their judgments for that of the party best able to determine a candidate's suitability—the college or university itself. *Id.* at 93.

█ In the instant case, Cornell contends Samimy was never demoted and retained his Research Associate classification and pay scale until the expiration of his final appointment. Cornell admits, however, that Samimy was working under Bjorkman in the capacity of a Research Support Specialist, a lower-ranking position.[10] It contends this move was necessary to ensure continued employment for Samimy at that time.

It is clear that the department's various research projects, and in turn, the Research Associates' and Support Specialists' employment, were dependent on continued finding (whether from internal or external sources.) (See Samimy Exhibits, Exhibits O, DD; Cornell Exhibits, Exhibits 5, 11 at pp. 200102, 200097.) Several documents submitted by Samimy evidence the fiscal difficulties experienced by the Horticultural Sciences Department during the course of his employ-

---

**9.** During his deposition, Samimy was asked:

Q ... My question is who are you referring to in your allegation in paragraph seventeen that others of equal and/or lower caliber have been promoted?
A Those, those that were in the experiment station newsletter.
Q And then can you identify anybody that you were referring to in this allegation with more specificity than that they were in the ag station newsletter?

A No.
(Cornell Exhibits, Exhibit 12 at p. 74.)

**10.** In a letter to Samimy dated January 5, 1994, Department Chair Hugh Price explains that, "[t]he standard procedure at Cornell University is to classify positions based upon duties to be performed rather than on the educational level or experience of the individual appointed to a position." (Cornell Exhibits, Exhibit 6 at p. 200005.)

ment there. (See Samimy Exhibits, Exhibits J, X, HH.) Against this background, Cornell offers the explanation that Samimy was paired with Bjorkman because Samimy's own project was scheduled for termination and Bjorkman needed technical support.[11] (See Samimy Exhibits, Exhibit G at p. 29.)

In sharp contrast, Samimy has failed to present any evidence that Cornel's proffered explanation is pretextual. In order to fulfill his evidentiary burden, he is required to show that the alleged demotion resulted from more than a "disagreement about the scholarly merits of ... [his] academic work, [his] ... teaching abilities or the academic needs of the department or university." *See Zahorik,* 729 F.2d at 94. He was required to provide at least some evidence that the decision was "influenced by forbidden considerations." *Id.* He has failed to do so.

■ Cornell further argues that it had good reason for its decision not to renew Samimy's appointment. In May 1994, Samimy sent an allegedly unauthorized letter to the sponsors of the buckwheat project announcing a breakthrough in their research. Bjorkman testified in his deposition that he did not approve the letter and that his name was included in the announcement without his consent. Bjorkman admitted that the announcement was factually correct—they had successfully produced a hybridized buckwheat plant. However, Bjorkman testified that the announcement was misleading because a reader could infer that hybrid seeds were now available. In fact, Bjorkman claims to have received some requests for the new seeds and/or information confirming their availability. Bjorkman contends he was forced to concede that there were no seeds available. Ultimately, the plant failed to produce any seeds.

Samimy contends that his unauthorized announcement caused no harm, that no one

informed him that his actions were inappropriate, and that nothing was placed in his file regarding the incident until October 17, 1994, following a second controversial disclosure by Samimy.

On September 19, 1994, Samimy sent another letter to the sponsors of the buckwheat program. There, he indicated that the department's decision to terminate the buckwheat project affected his own position. He states:

> ... I will be offered another position at a lower rank but [sic] still be working for Dr. Bjorkman in the area of vegetable physiology. This position seems to be more secure than depending on buckwheat funds which, if you would approve, will be for one year. Unless the department would keep its promise and the aforementioned job is still offered to me in 1996, I will not be able to continue on [sic] buckwheat project in 1995 and have to accept what has been offered to me.

(Samimy Exhibits, Exhibit GG.)

Samimy contends no harm was caused by the disclosure. However, Bjorkman testified that prior to Samimy's letter, Bjorkman had submitted a large grant proposal to the buckwheat sponsors.[12] Bjorkman stated that once the sponsors learned that Samimy would no longer be involved in the project, they refused to find the proposal. The sponsors ultimately did find a much less ambitious proposal that did not include Samimy's participation. (Cornell Exhibits, Exhibit 25 at pp. 65–71.)

Cornell contends that Samimy's actions were both inappropriate and unprofessional and evidenced his unwillingness to act as a team member. As a result, Cornell withdrew its prior offer to Samimy of a nonacademic position in Bjorkman's lab and informed Samimy that his current appointment would not be renewed. (Cornell Exhibits,

---

11. Apparently, Samimy himself helped write the new position description. (See Affirmation of Jeffrey Wicks in opposition to Cornell's motion for summary judgment at p. 6; Samimy Exhibits, Exhibit BB.) Further, Cornell agreed to offer Samimy a three-year appointment, rather than the one-year appointment initially discussed. Cornell also agreed to find Samimy another pro-

ject should his assignment with Bjorkman not work out. (Cornell Exhibits, Exhibit 5.)

12. Bjorkman testified that this initial proposal included sufficient funding to insure Samimy's continued participation after his appointment expired in February 1995. (Cornell Exhibits, Exhibit 25 at pp. 72–73.)

Exhibit 29; Samimy Exhibits, Exhibit G at p. 124.)

Although he disputes that the first disclosure was unauthorized, Samimy apparently admits (by omission) that the second disclosure was made without prior approval. He contends, however, that neither disclosure caused any harm. But even if that were the case, Cornell would still be entitled to conclude that Samimy was not a "team player" and should be let go. As the Second Circuit explained in *Dister*, "the reasons tendered need not be well-advised, but merely truthful." 859 F.2d at 1116. "The distinction lies between a poor business decision and a reason manufactured to avoid liability." *Id.; see also DeMarco v. Holy Cross High School*, 4 F.3d 166, 170–71 (2d Cir.1993). It is not for this Court to second-guess the wisdom of these academic decisions.

In sum, it cannot be said, on the facts before me, that Cornell's decision not to reappoint Samimy "was so lacking in merit as to call into question its genuineness." *Dister*, 859 F.2d at 1116. Having failed to meet his evidentiary burden, Cornell is entitled/to judgment on Samimy's discrimination claims as a matter of law.

### CONCLUSION

For the reasons set forth above, Cornell's motion for summary judgment as to all claims is granted, and Samimy's complaint is dismissed.

IT IS SO ORDERED.