Barbara VISCO, Plaintiff,

v.

COMMUNITY HEALTH PLAN, and Dale Schecter, both individually and as an agent of Community Health Plan, Defendants.

No. 95–CV–0764.

United States District Court, N.D. New York.

March 3, 1997.

Berger & Ducharme, L.L.P., Clifton Park, NY (John B. Ducharme, of counsel), for plaintiff.

Jackson, Lewis, Schnitzler & Krupman, New York City (Lori D. Bauer, Scott T. Baken, Steven D. Hurd, of counsel), for defendants.

## MEMORANDUM–DECISION & ORDER

McAVOY, Chief Judge.

## I. BACKGROUND & FACTS

This case concerns allegations of sex/pregnancy discrimination arising out of the plaintiff's termination from employment at the defendant Community Health Plan (CHP). The defendants, CHP and Dale Schecter, the plaintiff's most recent supervisor at CHP, now come before the Court seeking summary judgment against the plaintiff, Barbara Visco, as to all claims set forth in the Complaint.

Briefly, the plaintiff has worked for CHP since July 1991.[1] At that time she was employed as a temporary data entry clerk. She became a full-time employee and was transferred to the Troy Health Center.

In March 1993, the plaintiff transferred to the Dedicated Service Unit.[2] The plaintiff worked in various capacities in that Unit until November 1994. During that time, the plaintiff was supervised first by Debra Devine and then Marcia Griffith. The defendants allege that Marcia Griffith discussed with the plaintiff her abuse of the phones. Ms. Griffith allegedly told the plaintiff that she was spending too much time on personal calls. She also advised the plaintiff that she would be disciplined if she did not curb her excessive usage. Phone records from June through September 1994 indicate that the plaintiff made 348 phone calls, totaling 24 hours and 37 minutes of work time. The defendants also state that the phone abuse may have been more severe given that the phone records only reflect the number and duration of outgoing calls.

The plaintiff disputes the defendants' version of events concerning phone calls during this period of time. According to the plaintiff, Ms. Griffith addressed the entire staff, not the plaintiff alone, about phone usage. Moreover, the plaintiff alleges that she received awards while under Ms. Griffith's supervision, and never received a performance review, much less a negative review. Finally, the plaintiff alleges that her job required phone use, and that the majority of the calls listed on the phone logs were work related calls.

In late November 1994, the plaintiff transferred to a position in the Premium Billing Department. The plaintiff claims that she was hired to assist the defendant Schecter with an increased workload that was overwhelming Schecter. According to the defendants, this position did not require the use of the phone.

---

1. The plaintiff also worked for CHP from November 1990 until March 1991, when she moved to Oklahoma. That time period is unrelated to the sequence of events leading up to the plaintiff's termination.

2. The Dedicated Service Unit processes claims for General Electric and Martin Marietta.

In December 1994, the plaintiff informed her supervisor, the defendant Dale Schecter, that she was pregnant. It is undisputed that the defendant Schecter's sole verbal reply was an inquiry as to whether the plaintiff would be returning to work after her pregnancy. The plaintiff replied that she would return after taking the permitted twelve weeks maternity leave.[3] No other comments were ever made to the plaintiff relating to her pregnancy.

Subsequent to the plaintiff's announcement of her pregnancy, the plaintiff alleges that the defendant Schecter began to treat her differently, e.g., ceasing to provide needed additional training, avoiding plaintiff, and being unavailable to answer questions. The defendants claim that the defendant Schecter was unaffected by the plaintiff's pregnancy. However, the defendants claim that in December 1994 and January 1995, defendant Schecter received several complaints from employees in the Premium Billing Department regarding the plaintiff's excessive phone use. These employees include: Christy Kaufman, who sat next to the plaintiff at work; Kim Santori, a team leader in the Department; Allyson Towler, a fellow supervisor in the Department; and Virginia Hordines, the defendant Schecter's supervisor. Following the receipt of these complaints, the defendant Schecter sat near the plaintiff's work area for a few days and listened to the plaintiff's phone conversations to test the validity of the complaints. The defendant Schecter concluded that the plaintiff was using CHP time and phone lines excessively for personal matters.

On January 9, 1995, following the complaints and the defendant Schecter's observations, the defendant Schecter met with the plaintiff to discuss the alleged excessive phone use. The plaintiff was informed of the complaints against her and told to curb her personal phone use. However, the plaintiff apparently continued to use the phone excessively. Both Ms. Hordines and Ms. Towler witnessed this excessive phone use, and recommended terminating the plaintiff's employment to the defendant Schecter. Shortly thereafter, the defendant Schecter met with

Amy Fey, CHP's Human Resources Manager, in regard to the possible termination of the plaintiff. Ms. Fey determined that adequate grounds existed for such action. The plaintiff was terminated from employment at CHP on January 26, 1995.

The plaintiff denies excessive use of the phones at CHP for personal calls, although she admits that she was reprimanded by the defendant Schecter on January 9, 1995. Moreover, the plaintiff claims that she was not told that she would be fired if there was no change in the perceived problem. The plaintiff claims shock and embarrassment on January 26, 1995 when her employment was terminated. In addition, she claims that her phone use during the time frame January 9, 1995 through January 26, 1995, the time period after her reprimand and prior to her termination, was not excessive. The plaintiff also notes that the defendants conspicuously have not produced the phone records for that time period. It is the plaintiff's contention that the defendants have failed to produce these records because they would support the plaintiff's position.

The plaintiff also contests the procedures employed to terminate her employment. The plaintiff claims that she was a permanent employee, not a probationary employee. The significance of this distinction is that permanent employees, pursuant to the CHP employee handbook, are entitled to advance notice of their pending termination "unless a serious violation of policies or procedures occurred." Plaintiff's Exhibit "L"—CHP Staff Handbook at 25. The plaintiff alleges that she received no such notice. Moreover, the plaintiff argues that the Staff Handbook contains only a general admonition to keep personal phone use to a minimum, rather than a clear expression of what is and is not excessive use. Finally, the plaintiff claims that other women in her Department have become pregnant, taken leave, and returned without losing their jobs. The plaintiff argues that her pregnancy and subsequent twelve week absence would have burdened her supervisor, who was having difficulties with her work load already, such that the supervisor decided to terminate the plaintiff's

---

3. The twelve weeks are comprised of a combina-tion of maternity leave and vacation time.

employment. The defendants, of course, deny the plaintiff's charge.

In the present motion, the defendants allege that they are entitled to summary judgment as to the Title VII, New York Human Rights, and intentional infliction of emotional distress claims. As to the Title VII and New York Human Rights claims, the defendants claim that the plaintiff cannot make out a prima facie case of discrimination because she cannot establish the second prong of the McDonnell Douglas test, i.e., that she was performing her work satisfactorily. The plaintiff claims that all she must establish is that she was qualified for the job to meet this contested prong of the prima facie case. As to the intentional infliction of emotional distress claim, the defendants argue that there are no facts in the record rising to level of intentional infliction of emotional distress.

The Court now turns to the issues presented.

## II. DISCUSSION

### A. Claims One and Four as Against the Defendant Schecter

. Pursuant to a Stipulation of the parties, the plaintiff's first claim, alleging a violation of Title VII and the third claim, alleging tortious interference with contract, are dismissed, with prejudice, as against the defendant Schecter. The remaining claims for a violation of Title VII as against the defendant CHP, a violation of the New York Human Rights law, and intentional infliction of emotional distress are considered below.

### B. Standard for Summary Judgment

The standard for granting a motion for summary judgment is well-settled. Summary judgment is appropriate when no genuine issues of material fact exist, and thus the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). The movant bears the initial burden of showing the Court that, on the evidence before it, there is no genuine issue of material fact. See, Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The nonmovant must then "set forth specific facts showing that there is a genuine

issue for trial." Fed.R.Civ.Proc. 56(e). There must be more than a "metaphysical doubt as to the material facts." Delaware & Hudson Rwy. Co. v. Conrail Corp., 902 F.2d 174, 178 (2d Cir.1990), quoting Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). "In considering a motion for summary judgment, the district court may rely on 'any material that would be admissible or usable at trial.'" Azrielli v. Cohen Law Offices, 21 F.3d 512, 516 (2d Cir.1994), quoting 10A C. Wright & A. Miller, Federal Practice and Procedure: Civil § 2721 at 40 (2d ed. 1983). However, the Court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. Celotex, 477 U.S. 317, 106 S.Ct. 2548; Azrielli, 21 F.3d at 517. Any assessments of credibility and all choices between available inferences are matters to be left for the fact finder, not matters to be decided by the Court on summary judgment. Id.; See, e.g., Fed.R.Civ.P. 56(e), 1963 Advisory Committee Note; Agosto v. INS, 436 U.S. 748, 756, 98 S.Ct. 2081, 2086, 56 L.Ed.2d 677 (1977). "Only when reasonable minds could not differ as to the import of the evidence is summary judgement proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir.1991).

Although the Court recognizes that "summary judgment is ordinarily inappropriate where an individual's intent and state of mind are implicated," such as in the context of claims of sexual harassment, Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir.1985) (citation omitted), it is clear that "conclusory allegations of discrimination are insufficient to satisfy the requirements of Rule 56(e)." Id. (citations omitted). Nevertheless, the Court's ultimate role when analyzing any summary judgment motion is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial. See Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1224 (2d Cir.1994).

It is with the foregoing standards in mind that the Court turns to the issues presented.

## C. Sex/Pregnancy Discrimination

The plaintiff alleges sex discrimination based on her termination from employment for reasons allegedly relating solely to the plaintiff's pregnancy and expected absence from work.

New York courts rely on a Title VII analysis to determine claims brought under New York Executive Law § 296(1)(a) (New York State Human Rights Law). *See, e.g., Reed v. A.W. Lawrence & Co.,* 95 F.3d 1170, 1177 (2d Cir.1996). Accordingly, the plaintiff's Title VII and New York Human Rights claims are considered together herein.

The United States Supreme Court previously ruled that pregnancy discrimination is not sex discrimination. *See General Electric Co. v. Gilbert,* 429 U.S. 125, 135, 97 S.Ct. 401, 407, 50 L.Ed.2d 343 (1976). Congress overruled *Gilbert* by enacting the Pregnancy Discrimination Act (PDA) as a definitional amendment to Title VII. *See* 42 U.S.C. § 2000e(k). As stated in the PDA "[t]he terms 'because of sex' or 'on the basis of sex' in Title VII include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions." *See* 42 U.S.C. § 2000e(k).

The showing the plaintiff must make as to the elements of the *prima facie* case is "de minimis." *See, e.g., Cronin v. Aetna Life Ins. Co.,* 46 F.3d 196, 202 (2d Cir.1995). Through direct, statistical, or circumstantial evidence, the plaintiff must show: (1) that she is a member of a protected class; (2) that she was performing her duties satisfactorily/was qualified for the position;[4] (3) that she was subjected to an adverse employment decision; and (4) that the adverse employment decision occurred in circumstances that give rise to an inference of discrimination based on her membership in a protected class. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); *Chambers v. TRM Copy Centers Corp.,* 43 F.3d 29, 37 (2d Cir. 1994). Once plaintiff has made the requisite *prima facie* showing of discrimination, the defendant bears the burden of introducing

admissible evidence that shows that the employer's actions were legitimate and non-discriminatory. *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 507, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993), *citing Texas Dep't. of Community Affairs v. Burdine,* 450 U.S. 248, 254–55 n. 8, 101 S.Ct. 1089, 1094 n. 8, 67 L.Ed.2d 207 (1981); *Quaratino v. Tiffany & Co.,* 71 F.3d 58, 64 (2d Cir.1995). After defendant has articulated non-discriminatory reasons for its actions, the plaintiff must show that defendant's proffered reasons are merely pretextual. *See Chambers,* 43 F.3d at 36.

### 1. Protected Class

It is not contested that the plaintiff is a member of a protected class, i.e., pregnant women.

### 2. Performing Duties Satisfactorily/Qualified for the Position

■ The second prong of the *McDonnell Douglas* test is contested by the parties. The defendants argue that the showing that the plaintiff must make to establish this prong is that she satisfactorily performed her duties at CHP. *See Quaratino,* 71 F.3d at 63; *Chambers,* 43 F.3d at 37; *Montana v. First Fed. Sav. & Loan Ass'n,* 869 F.2d 100, 104 (2d Cir.1989). On the basis of the purported authority of these cases the defendants argue that by excessively using the CHP phones for personal calls, the plaintiff failed to satisfactorily perform her job duties.

The plaintiff argues that the only showing it must make to meet the second prong of the *McDonnell Douglas* test is that she was qualified for the position. The plaintiff relies principally on a Decision from this District for their position. *See Mulqueen v. Daka,* 909 F.Supp. 86, 94 (N.D.N.Y.1995). For the reasons that follow, the Court agrees with the plaintiff.

First, looking to the cases cited by the defendants, the Court finds minimal support for the defendants' position.

In *Montana,* although the Circuit states that the *McDonnell Douglas* test is flexible,

---

**4.** The issue of what the plaintiff must establish to meet this prong of the test will be discussed below.

it repeatedly states that the second prong of that test is a showing that the plaintiff was "qualified for the job." 869 F.2d at 104. Thus, *Montana* provides no support for the defendants' interpretation of *McDonnell Douglas'* second prong.

In *Quaratino,* the Court stated that the second prong of the *McDonnell Douglas* test required a showing that the plaintiff "satisfactorily performed the duties required by the position." 71 F.3d at 64. However, the defendants overemphasize the importance of this statement in *Quaratino.* The issue of qualification/satisfactory performance was not contested in *Quaratino.* See 71 F.3d at 64 ("Both parties agree that Quaratino satisfied the first three elements of a *prima facie* case."). Accordingly, any discussion of the second prong of the *McDonnell Douglas* test is dicta. In addition, the *Quaratino* Court states, when giving a brief accounting of the first three prongs that concededly had been met, that the plaintiff "was within the protected class, her job performance had been satisfactory, and despite her qualifications, she was subjected to an adverse employment decision." *Id.* Based on this selected quote, it would seem that the Circuit is using the terms "satisfactorily performed" and "qualified" synonymously, or stating that by performing satisfactorily the plaintiff necessarily has shown that she is possessed of the qualifications for the job. This Court does not comment on the reading that it would give to the rather imprecise phraseology in *Quaratino,* other than to state that it underscores the limited use to which *Quaratino* should be put when discussing the second prong of the *McDonnell Douglas* test.

The *Chambers* Court, like the *Quaratino* Court stated that to establish the second prong of the *McDonnell Douglas* test, a plaintiff must show that he/she "was performing [his/her] duties satisfactorily." 43 F.3d at 37. As in *Quaratino,* there was no dispute as to the first three prongs of the test. Accordingly, any discussion of the second prong of the *McDonnell Douglas* test in *Chambers* bears no precedential value.

Second, the Court looks to cases that have addressed this issue directly. The Second Circuit has stated that to require more than a showing that the plaintiff "possesses the basic skills necessary for the job ... unnecessarily collapses the steps suggested by *McDonnell Douglas* by shifting considerations which are more appropriate to the employer's rebuttal phase to the earlier requirement that the employee demonstrate competence to perform the specified work." *Powell v. Syracuse University,* 580 F.2d 1150, 1155 (2d Cir.1978). Quoting *Powell,* the Second Circuit quite recently has reiterated its interpretation of the showing necessary to meet the second prong of the *McDonnell Douglas* test by stating "[t]o satisfy the second element of the test, the plaintiff need not demonstrate that his performance was flawless or superior. Rather, he need only demonstrate that he 'possesses the basic skills necessary for performance of [the] job.'" *de la Cruz v. New York City Human Resources Admin. DSS,* 82 F.3d 16, 20 (2d Cir.1996), *quoting Powell,* 580 F.2d at 1155. Thus, on the occasions when this Circuit has directly addressed the issue of the second prong, it has long and unequivocally held that a plaintiff need only show that she is qualified for the position. *See also, Mulqueen,* 909 F.Supp. at 91 (concluding, after extended discussion, that plaintiff need only establish basic qualification for job to meet second prong of *McDonnell Douglas* test); *McDonnell Douglas,* 411 U.S. at 801, 93 S.Ct. at 1823 (holding that to meet second prong plaintiff must show "that he applied and was qualified for a job for which the employer was seeking applicants."); *Lloyd v. WABC–TV,* 879 F.Supp. 394, 401 (S.D.N.Y.1995) (stating that to meet second prong plaintiff must show "that she was qualified and applied for a job for which the employer was seeking candidates.").

The defendants do not contest that the plaintiff is qualified for the position from which she was terminated. Moreover, the plaintiff has alleged, and the defendant Schecter has testified, that the plaintiff is capable and qualified to perform the duties of a Managed Care Options (MCO) Representative in the Premium Billing Department at CHP, the position from which the plaintiff was fired. Thus, this Court finds that the

plaintiff has established the second prong of the *McDonnell Douglas* test.

### 3. Adverse Employment Action

It is uncontested that the plaintiff was terminated from her job, and that such action constitutes adverse employment action.

### 4. Inference of Unlawful Discrimination

It is uncontested that the circumstances surrounding the plaintiff's dismissal from employment at CHP raises an inference of discrimination.

### D. Defendants' Reason for Terminating the Plaintiff's Employment at CHP

After the plaintiff has made out a *prima facie* case of discrimination, the burden shifts to the defendants to come forward with legitimate nondiscriminatory reasons for terminating the plaintiff's employment. *See Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 203 (2d Cir.1995).

The defendants claim that they fired the plaintiff because she excessively used her phone at work to make personal phone calls. Although the phone records are unavailable for the time period January 9, 1995 through January 26, 1995, it is undisputed that the plaintiff was reprimanded by the defendant Schecter on January 9, 1995, in response to complaints by plaintiff's co-workers, a co-supervisor, and the defendant Schecter's supervisor that the plaintiff was using her work phone excessively during business hours for personal calls. The defendant Schecter testified that she had personally heard the plaintiff using the phone for personal calls.

Ms. Towler, the defendant Schecter's co-supervisor, testified in her deposition that she sat in close proximity to the plaintiff at work and personally heard the plaintiff on the phone discussing non work-related matters on an excessive number of occasions. In addition, Ms. Towler, on at least one occasion, was forced to stand by the plaintiff and wait to discuss a business matter with the plaintiff while the plaintiff continued a personal call. Ms. Towler recommended to the defendant Schecter that she speak with the plaintiff in an attempt to halt the plaintiff's behavior.

Ms. Hordines, the defendant Schecter's supervisor, allegedly was forced to wait to discuss a business matter with the plaintiff while the plaintiff continued a personal call. Ms. Hordines recommended that the defendant Schecter speak with the plaintiff in an attempt to halt the plaintiff's behavior.

At least one of the plaintiff's co-workers, Christy Kaufman, complained to the defendant Schecter about the plaintiff's phone use.

Following the January 9, 1995 reprimand, the plaintiff's behavior allegedly improved for several days. However, the plaintiff then resumed her excessive use of the phones. In response, the defendant Schecter attempted to make her presence in the office more visible to the plaintiff in the hope of prompting the plaintiff to use the phone less frequently. This tactic also permitted the defendant Schecter to verify that the majority of the calls that the plaintiff made during office hours were personal in nature. Ms. Towler testified that, after noting that the plaintiff's phone habits did not improve following January 9, 1995, she recommended that the defendant Schecter fire the plaintiff. Ms. Hordines also recommended that the defendant Schecter fire the plaintiff. Each saw the continued phone abuse as an impediment to proper work performance and a potential morale problem. In addition, each reasoned that since the plaintiff had just recently started in the MCO position, she most likely was on her best behavior. If her best behavior was unacceptable, and the plaintiff showed no inclination to modify her behavior when reprimanded, Ms. Towler and Ms. Hordines concluded that the plaintiff simply was not a good fit for the position or their Department.

Following the recommendations by Ms. Towler and Ms. Hordines that the defendant Schecter should terminate the plaintiff's employment, the defendant Schecter consulted with Ms. Fey, CHP's Human Resources Manager, about the plaintiff's situation. Ms. Fey indicated to the defendant Schecter that she had proper grounds to fire the plaintiff.

As stated by the defendants, the plaintiff was terminated from employment at CHP for excessive use of the phones for personal calls.

Based on the record before the Court, the defendants have set forth a legitimate, non-discriminatory reason for terminating the plaintiff's employment.

### E. Pretext

After defendant has articulated non-discriminatory reasons for its actions, the plaintiff must show that defendant's proffered reasons are merely pretextual. *See Chambers,* 43 F.3d at 36. This means that the plaintiff has the burden of proving by a preponderance of the evidence that the defendant's proffered reason is not the true reason, but instead, is a pretext for discrimination. *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093. For the purposes of defeating the defendants' motion for summary judgment, the plaintiff need only raise a material factual issue as to whether the defendants' reason for firing the plaintiff constituted a pretext.

■ "Pretext may be demonstrated either by the presentation of additional evidence showing that 'the employer's proffered explanation is unworthy of credence,' or by reliance on the evidence comprising the *prima facie* case, without more." *Chambers,* 43 F.3d at 38, *quoting Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095; *see also St. Mary's Honor Center,* 509 U.S. at 510–12, 113 S.Ct. at 2748–50. However, "[t]he most probative means of proving pretextual discharge is to demonstrate that similarly situated [ ] employees were treated differently." *Francis v. Runyon,* 928 F.Supp. 195, 202 (E.D.N.Y.1996), *citing McDonnell Douglas,* 411 U.S. at 804, 93 S.Ct. at 1825 (stated in the context of alleged racially disparate hiring practices).

■ The plaintiff has set forth no facts tending to show that the defendants' reasons for the plaintiff's dismissal are incredible. *See Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095. Rather than discriminate against pregnant women who seek to take maternity leaves, the record is replete with evidence that CHP, and in particular the Premium Billing Department, accommodated such employees. From January 1, 1995 through December 31, 1995, five female employees requested maternity leave, were granted such leave, and subsequently four returned to work.[5] The plaintiff's supervisor herself had taken maternity leave for twelve weeks, previously. In addition, Ms. Towler took maternity leave on three separate occasions. No facts that suggest that any pregnant employee in the Premium Billing Department was ever denied a position or fired after requesting leave time.

Given this background the plaintiff would have the Court find a material factual issue as to whether she was, in essence, forced out of her job because she asked for twelve weeks leave. However, the plaintiff has presented no more than her subjective interpretation of the reason for her termination from employment at CHP. In addition, the plaintiff claims that the failure of CHP to give her prior written notification that she would be terminated if she did not curb her phone habits indicates that the defendants wanted the plaintiff gone regardless of her behavior.

After a thorough review of the record, the Court finds that the only comment made in relation to the plaintiff's request was made by the defendant Schecter, and was no more than an innocuous inquiry as to whether she would return to work after taking her leave. Given that a co-worker of the plaintiff had just decided to not return to work after giving birth to her child, the question was reasonable.

As has consistently been held by other courts, an employer may exercise business judgment in making personnel decisions as long as they are not discriminatory. *Dister v. Continental Group, Inc.,* 859 F.2d 1108, 1116 (2d Cir.1988) ("Evidence that an employer made a poor business judgment in discharging an employee generally is insufficient to establish a genuine issue of fact as to the credibility of the employer's reasons."); *Mesnick v. General Elec. Co.,* 950 F.2d 816, 825 (1st Cir.1991) ("Courts may not sit as super personnel departments, assessing the merits—or even the rationality—of employers' nondiscriminatory business decisions.");

---

**5.** The fifth allegedly chose not to return to work. There is no allegation that the fifth individual was denied her job following maternity leave.

*Nix v. WLCY Radio/Rahall Communications,* 738 F.2d 1181, 1187 (11th Cir.1984) ("The employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason."). In the instant case, the plaintiff claims that she did not use the phone excessively and that she never received prior written notification of her impending termination. In essence, she questions an employment decision made by CHP. However, in the absence of some credible evidence that the plaintiff's termination from employment was for a discriminatory reason, the Court will not manufacture a question of fact to preclude summary judgment.

■ As to those who may be similarly situated to the plaintiff, but treated differently,

> [e]mployees are not 'similarly situated' merely because their conduct might be analogized. Rather, in order to be similarly situated, other employees must have reported to the same supervisor as the plaintiff, must have been subject to the same standards governing performance evaluation and discipline, and must have engaged in conduct similar to the plaintiff's, without such differentiating or mitigating circumstances that would distinguish their conduct or the appropriate discipline for it.

*Francis,* 928 F.Supp. at 203 (citation omitted). In the instant case, the plaintiff has not shown, or even alleged, that any other individual co-worker used the phone to a substantially similar degree as the plaintiff, but escaped discipline, much less a pregnant co-worker. At best, the plaintiff suggests that her supervisor was having difficulty with an increased workload. The plaintiff suggests that CHP fired her because her twelve week absence would cause greater difficulties for the defendant Schecter. However, Ms. Towler testified that maternity leave was a common occurrence, and that a usual practice had developed in the Department in which the other employees absorbed any excess during a maternity absence. In short, as the plaintiff admits in her deposition, there is no support for the plaintiff's position

other than the plaintiff's personal opinion that her firing was for reasons relating to her pregnancy. This claim is insufficient as a matter of law. *See Meiri,* 759 F.2d at 998.

Accordingly, the defendants' motion should be granted dismissing the plaintiff's Title VII and New York Human Rights Law claims.

## F. Intentional Infliction of Emotional Distress

The plaintiff alleges that the defendants intentionally caused her to suffer emotional distress. The defendants argue that there are no facts in the record to support a claim for intentional infliction of emotional distress (IIED).

■ To prevail on a claim for intentional infliction of emotional distress, a plaintiff must prove that a defendant's conduct "(i) [was] extreme and outrageous[ ]; (ii) [was intended] to cause, or [disregarded] a substantial probability of causing, severe emotional distress; (iii) [was] a [cause of the emotional] injury; and (iv) [in fact caused the plaintiff] severe emotional distress." *Howell v. New York Post Co., Inc.,* 81 N.Y.2d 115, 121, 596 N.Y.S.2d 350, 612 N.E.2d 699 (1993). The standard to meet is " 'rigorous, and difficult to satisfy.' " *Id.* at 122, *quoting* Prosser and Keeton, Torts § 12, at 60–61 [5th ed]. Liability is limited to only those cases " 'where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.' " *Id., quoting Murphy v. American Home Prods. Corp.,* 58 N.Y.2d 293, 303, 461 N.Y.S.2d 232, 448 N.E.2d 86 (1983).

In the instant case, the plaintiff's sole basis for the IIED claim is that she was fired for reasons relating to her pregnancy and request for twelve weeks of·leave time. The plaintiff makes no further allegations that would support a claim for IIED. This is insufficient as a matter of law to raise a material factual issue. Accordingly, the defendants' motion for summary judgment as to the claim for IIED is granted.

## III. CONCLUSION

For the reasons stated above, the Court hereby GRANTS the defendants' motion for summary judgment, dismissing the plaintiff's Complaint in its entirety.

**IT IS SO ORDERED.**