**Mary E. ALFIERI, Plaintiff,**

v.

**SYSCO FOOD SERVICES— SYRACUSE, Defendant.**

**No. 00–CV–6267L.**

United States District Court, W.D. New York.

Sept. 14, 2001.

---

Mary E. Alfieri, Fairport, NY, Pro se.

Edward A. Trevvett, Harris Beach LLP, Rochester, NY, for Defendant.

## DECISION AND ORDER

LARIMER, Chief Judge.

### Procedural Background

Plaintiff Mary Alfieri ("Alfieri") instituted the instant action against her former employer, SYSCO Food Services of Syracuse ("SYSCO"). Alfieri alleges that SYSCO has discriminated against her in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.* ("ADEA"), and the Equal Pay Act, 29 U.S.C. § 206(d) ("EPA"). Currently before the Court, is SYSCO's motion, under FED. R. CIV. P. 56, for summary judgment. For the reasons that follow, SYSCO's motion is granted.

### Factual Background

Plaintiff, who was born in October 1954, was hired by SYSCO in November 1996 at the age of 42 as a marketing associate. Alfieri had been employed by SYSCO for little more than two years when she tendered her resignation on April 23, 1999.

During the short time she had been employed, plaintiff experienced a number of performance problems. In February 1998, for example, plaintiff received a performance evaluation in which she was rated less than satisfactory in a number of areas. In March 1998, as a result of her deficiencies in performance, plaintiff was placed on probation. Although plaintiff complained that a performance plan on which she had been placed was unfair, she never indicated that she thought she was in any way being treated unfairly because of her age or because she was female.

In June 1998, plaintiff applied for and was awarded a position as a health care marketing associate. Her supervisor in that position was Patricia Chase ("Chase"). In December 1998, Chase informed plaintiff that her performance was unsatisfacto-

ry, and that she was once again being placed on probation. On April 23, 1999, Chase met with plaintiff and offered her a letter outlining the areas in which plaintiff needed to improve. The letter also extended plaintiff's probation until June 25, 1999, and scheduled additional evaluations for May 28, 1999 and June 28, 1999. Plaintiff concluded the meeting by tendering her resignation from SYSCO.

On October 14, 1999, plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC"), in which she claimed that SYSCO discriminated against her between December 31, 1998 and April 23, 1999. The EEOC investigated plaintiff's charge, and on March 14, 2000, the EEOC notified plaintiff that it was "unable to conclude that the information obtained establishes violations of statutes." Although it is not binding upon me, I note the following from a letter, dated March 14, 2000, that the EEOC issued to plaintiff:

> [t]he evidence fails to indicate that a violation of the law occurred and it is not likely that additional investigation will result in our finding of a violation. More specifically, you alleged that you were subjected to difference [*sic*] terms and conditions of employment, given unrealistic sales goals, received unfavorable evaluations and references and felt forced to resign because of your age over 40 and sex, female.... We learned that more than once you were placed on probation because of failing to meet sales goals. You have failed to provide us any comparative evidence, specifically, names of sales associates whose sales were equal to or below your level of achievement, who were not treated in the same manner.... Furthermore, we learned that the Respondent was unaware of any comments or jokes that were unwelcome by you. Unless management was aware or of the situation they would have been unable to stop the alleged activity. Also, we learned that your replacement was a female, older than yourself.

In her *pro se* complaint, plaintiff alleges a hostile work environment in violation of Title VII, gender and age discrimination in violation of Title VII and the ADEA, respectively, and EPA violations. More specifically, she alleges that she received less training and less pay than male employees, she was intimidated by her supervisor and evaluated more often than others, and she was forced to resign. SYSCO counters that many of the allegations in plaintiff's complaint are untimely, that plaintiff has failed to raise a *prima facie* case under either Title VII, the ADEA, or the EPA, and that upon plaintiff's resignation, she was replaced by an older female.[1]

In violation of this Court's Local Rule 7.1(e), plaintiff failed to submit any affidavit or memorandum in response to this motion.[2] Instead, plaintiff filed a variety of unauthenticated pages of personal notes and other documents pertaining to various sales figures at SYSCO, and requested

---

1. Plaintiff has not filed a statement of material facts as to which she contends there is a genuine issue as required by Rule 56 of this Court's Local Rules of Civil Procedure. Failure to comply with Local Rule 56 allows the Court to deem admitted all material facts set forth in defendant's Rule 56 statement. While, in light of the facts set forth in SYSCO's Local Rule 56 statement, defendant's motion may be granted on this basis alone, I have nonetheless carefully reviewed all inferences that reasonably may be drawn from the facts in the light most favorable to plaintiff.

2. SYSCO correctly provided plaintiff with notice of the requirements of Rule 56, and of the consequences of noncompliance therewith, in its notice of the instant motion. Dkt. # 8; *see also Irby v. New York City Transit Authority*, 262 F.3d 412 (2d Cir.2001).

that the court "see between the lines" in evaluating the case. By order entered January 11, 2001, I granted plaintiff an additional opportunity to set forth her argument as to why the case should not be dismissed. Dkt. # 13. On January 22, 2001, plaintiff submitted an additional letter in opposition to SYSCO's motion. Dkt. # 14.

## DISCUSSION

### A. Summary Judgment—General Standards

The standard for deciding summary judgment motions is well established. Rule 56(c) provides that a motion for summary judgment shall be granted if the pleadings and supplemental evidentiary materials "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Under the rule, the burden of demonstrating the absence of any genuine issue of material fact rests on the moving party. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). After the moving party has carried its burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "[T]he non-moving party must come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Id.* at 587, 106 S.Ct. 1348 (emphasis in original) (quoting Fed.R.Civ.P. 56(e)).

"Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* at 587, 106 S.Ct. 1348. When perusing the record to determine whether a rational fact-finder could find for the non-moving party, however, all reasonable inferences must be drawn in favor of the non-moving party. *See Murray v. National Broadcasting Co.,* 844 F.2d 988, 992 (2d Cir.), *cert. denied,* 488 U.S. 955, 109 S.Ct. 391, 102 L.Ed.2d 380 (1988).

■ The general principles underlying a motion for summary judgment fully apply to discrimination actions. Although courts should be cautious about granting summary judgment in cases where motive, intent or state of mind are at issue, *Dister v. Continental Group, Inc.,* 859 F.2d 1108, 1114 (2d Cir.1988); *Montana v. First Federal Savings and Loan Association of Rochester,* 869 F.2d 100, 103 (2d Cir.1989), "the salutary purposes of summary judgment—avoiding protracted, expensive and harassing trials—apply no less to discrimination cases than to commercial or other areas of litigation." *Meiri v. Dacon,* 759 F.2d 989, 998 (2d Cir.), *cert. denied,* 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985) (summary judgment rule would be rendered sterile if mere incantation of intent or state of mind would act as a talisman to defeat an otherwise valid motion). Consequently, once the moving party has met its burden, the non-moving party in a discrimination action must come forward with evidence upon which a rational fact-finder could return a verdict in his favor. For a plaintiff in a discrimination case to survive a motion for summary judgment, he or she must do more than present "conclusory allegations of discrimination," *Meiri v. Dacon,* 759 F.2d 989 (2d Cir.), *cert. denied,* 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985); he or she must offer "concrete particulars" to substantiate the claim. *Id.* (cited in *Duprey v. Prudential Ins. Co.,* 910 F.Supp. 879 (N.D.N.Y.1996)).

■ Where, as here, the plaintiff is proceeding *pro se,* the court will liberally construe the plaintiff's pleadings, and "interpret them 'to raise the strongest argu-

ments that they suggest.'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir.1999)(citing *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994)). Nevertheless, proceeding *pro se* does not otherwise relieve a litigant of the usual requirements of summary judgment, and a *pro se* party's bald assertions, unsupported by evidence, are insufficient to overcome a motion for summary judgment. *Carbonell v. Goord*, 99–CV–3208, 2000 WL 760751, *5 (S.D.N.Y. June 13, 2000).

## B. The Applicable Periods of Limitation

From the outset, it is evident that plaintiff's claims suffer, in large measure, from various procedural infirmities. These procedural infirmities include that many of plaintiff's claims are untimely, and that certain of plaintiff's claims exceed the scope of her administrative charge.

It is settled that allegations of discrimination occurring more than 300 days prior to the date a charge is filed are time-barred. *See* 42 U.S.C. § 2000e–5(e)(1); 29 U.S.C. § 626(d)(2); *Butts v. New York Dep't of Housing Preservation & Dev.*, 990 F.2d 1397, 1401 (2d Cir.1993) (Title VII case); *Dillman v. Combustion Engineering, Inc.*, 784 F.2d 57, 59 (2d Cir.1986) ("[n]o civil action based on a claim of age discrimination may be brought in a federal court unless the plaintiff has timely filed his claim with the EEOC"). Plaintiff filed her charge against SYSCO on October 14, 1999, and her Title VII and ADEA claims "would normally include any incidents alleged to have occurred in the preceding 300 day period." *See Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 765 (2d Cir. 1998). Therefore, any incidents alleged to have occurred prior to December 18, 1998 would normally be time-barred. *See id.* Yet, in her complaint, plaintiff references incidents dating from as early as January 1997.

■ Any discrimination claim Alfieri has would accrue when she knew or had reason to know of the injury serving as the basis for her claim. *See, e.g., Harris v. City of New York*, 186 F.3d 243, 247–249 (2d Cir.1999); *Cornwell v. Robinson*, 23 F.3d 694, 703 (2d Cir.1994); *Jordan v. Bates USA*, 2001 WL 138409, *2, 4 Fed. Appx. 73 (2d Cir.2001) (unpublished opinion). "[T]he proper focus [in an employment discrimination case] is on the time of the discriminatory act, not the point at which the consequences of the act become painful," *Chardon v. Fernandez*, 454 U.S. 6, 8, 102 S.Ct. 28, 70 L.Ed.2d 6 (1981), and, therefore, "the timeliness of a discrimination claim is measured from the date the claimant receives notice of the allegedly discriminatory decision, not from the date the decision takes effect." *O'Malley v. GTE Serv. Corp.*, 758 F.2d 818, 820 (2d Cir.1985).

■ Accordingly, the issue is when plaintiff knew or should have known of the items that now form the basis of her complaint. From that time, she had 300 days to file her charge with the EEOC. In this instance, the record is clear. The unauthenticated notes, on which plaintiff relies, reveal that plaintiff was aware of the acts she now alleges were discriminatory at the time those acts occurred in 1997 and 1998. Plaintiff, however, did not file her EEOC charge until October 14, 1999, which was well over 300 days after she knew or had reason to know of much of that which she now decries as discriminatory. Therefore, any claims based on events occurring prior to December 18, 1998 are time-barred, unless an appropriate defense is applicable.

■ In response to the instant motion, plaintiff does not assert a continuing violation from 1997 until 1999.[3] To the con-

---

**3.** Plaintiff has also not argued that the 300– day limitation period should be equitably

trary, in her charge, plaintiff states that the events at issue did not begin until December 31, 1998. *See* Charge, Dkt. # 8, Ex. I (wherein plaintiff lists "12/31/1998" as the "earliest" date the alleged discrimination occurred).

In any event, there is no support to find a continuing violation here. As a general rule, the courts of this circuit do not favor continuing violation arguments. *See Cavallaro v. Corning, Inc.*, 93 F.Supp.2d 334 (W.D.N.Y.2000), *appeal dismissed as frivolous without opinion*, 00–7718 (2d Cir.2000); *see also Lloyd v. WABC–TV*, 879 F.Supp. 394, 399 (S.D.N.Y.1995); *Blesedell v. Mobil Oil Co.*, 708 F.Supp. 1408, 1415 (S.D.N.Y.1989). "Indeed, only 'compelling circumstances' will warrant application of the exception to the statute of limitations." *Blesedell*, 708 F.Supp. at 1415 (citation omitted). In addition, Alfieri fails to allege any "specific ongoing discriminatory policies or practices" or "specific and related instances of discrimination [that] are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice" to invoke the continuing violation doctrine. *Quinn v. Green Tree Credit Corp.*, 159 F.3d at 766 (quoting *Cornwell v. Robinson*, 23 F.3d at 704). Rather, plaintiff alleges only isolated incidents that occurred prior to December 18, 1998. Moreover, even if there were multiple incidents of discrimination here, the Second Circuit has held that "multiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation." *Id.*, 159 F.3d at 765 (quoting *Lambert v. Genesee Hosp.*, 10 F.3d 46, 53 (2d Cir.1993)); *see also Lightfoot v. Union Carbide Corp.*, 110

F.3d 898, 907 (2d Cir.1997) (discrete incidents of discrimination not related to an identifiable policy or practice do not amount to continuing violation unless they are specifically related and allowed to continue unremedied for so long as to constitute a discriminatory policy or practice).

Certain of plaintiff's claims in her complaint suffer from the additional flaw that they exceed the scope of her administrative charge. A district court may hear only claims that are included in an EEOC charge or are based on conduct subsequent to the EEOC charge which is "reasonably related" to those alleged in the EEOC charge. *Butts v. City of New York Dep't of Housing*, 990 F.2d at 1401. " '[T]he purpose of the notice provision, which is to encourage settlement of discrimination disputes through conciliation and voluntary compliance, would be defeated if a complainant could litigate a claim not previously presented to and investigated by the EEOC.' " *Id.* (citations omitted).

Here, plaintiff's EEOC charge does not identify events occurring prior to December 1998. In fact, the charge specifically alleges that the discrimination occurred only from December 1998 until April 23, 1999. Therefore, it cannot be disputed that plaintiff's claims based on incidents occurring prior to December 1998 were not included in her charge. It is also clear that plaintiff's claims were not "based on conduct subsequent to the EEOC charge."

Plaintiff's intimations that she need not adhere to various rules because she is proceeding *pro se* are incorrect. A *pro se* plaintiff is no more entitled to present unexhausted claims than a plaintiff who is represented by a lawyer. *See Shannon v.*

---

tolled in the instant case. Even if she had, I find no facts in the record that would justify

equitable tolling.

*Ford Motor Co.*, 72 F.3d 678, 684–85 (8th Cir.1996) ("there is a difference between liberally reading a [*pro se*] claim which 'lacks specificity,' and inventing, *ex nihilo*, a claim which simply was not made" before the EEOC) (quoting *Pickney v. American Dist. Telegraph Co. of Arkansas*, 568 F.Supp. 687, 690 (E.D.Ark.1983)).

■ In sum, to the extent plaintiff has raised any allegations concerning conduct before December 18, 1998, all such claims must be dismissed.[4] Even if such claims were not barred, however, summary judgment would still be warranted for the additional reasons stated in this decision.

## C. Constructive Discharge

■ In a Title VII or ADEA action, a plaintiff establishes a *prima facie* case for discriminatory discharge by showing that (1) she was within a protected group; (2) she was qualified for her position; (3) she was discharged; and (4) the discharge occurred under circumstances giving rise to an inference of discrimination. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Rosen v. Thornburgh*, 928 F.2d 528, 532 (2d Cir.1991); *Hollander v. American Cyanamid Co.*, 895 F.2d 80, 83 (2d Cir.1990); *Pena v. Brattleboro Retreat*, 702 F.2d 322 (2d Cir.1983).

■ Here, it is undisputed that plaintiff was not actually terminated; rather, she resigned. The complaint, however, alleges that plaintiff was "forced" to resign. Complaint ¶ 19. Viewing the record in the light most favorable to plaintiff, I find that there are no genuine issues of material fact, and that SYSCO is entitled to summary judgment. First, there is no evidence here of unlawful discrimination of any kind. Second, plaintiff has not presented evidence from which a finder of fact could reasonably conclude that she was constructively discharged.

■ To establish a constructive discharge, plaintiff must show that her employer deliberately made her working conditions so intolerable that she was forced to resign. *Stetson v. NYNEX Serv. Co.*, 995 F.2d 355, 360 (2d Cir.1993); *Pena v. Brattleboro Retreat*, 702 F.2d 322, 325 (2d Cir.1983). This burden is not an easy one to carry. The Second Circuit has held that a constructive discharge cannot be established simply through evidence that the "employee was dissatisfied with the nature of h[er] assignments," "the employee feels that the quality of h[er] work has been unfairly criticized," or "the employee's working conditions were difficult or unpleasant." *Stetson*, 995 F.2d at 360.

---

4. The remote possibility that discovery *may* uncover evidence that supports her claims does not preclude the granting of SYSCO's motion. I note initially that plaintiff has not even requested discovery pursuant to FED. R. CIV. P. 56(f). *See Paddington Partners v. Bouchard*, 34 F.3d 1132, 1137–1138 (2d Cir.1994) ("the failure to file an affidavit under Rule 56(f) is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate"). Moreover, even if she had made such a request, a court can reject it if it deems the request to be based on speculation as to what potentially could be discovered. *See Gray v. Town of Darien*, 927 F.2d 69, 74 (2d Cir.1991) ("In a summary judgment context, an 'opposing party's mere hope that fur-

ther evidence may develop prior to trial is an insufficient basis upon which to justify the denial of [a summary judgment] motion' ") (quoting *Contemporary Mission, Inc. v. United States Postal Serv.*, 648 F.2d 97, 107 (2d Cir. 1981)), *cert. denied*, 502 U.S. 856, 112 S.Ct. 170, 116 L.Ed.2d 133 (1991); *Capital Imaging Assoc. v. Mohawk Valley Medical Assoc.*, 725 F.Supp. 669, 680 (N.D.N.Y.1989) (citing *Waldron v. Cities Serv. Co.*, 361 F.2d 671, 673 (2d Cir.1966)) (citations omitted) (While "Rule 56(f) discovery is specifically designed to enable a plaintiff to fill material evidentiary gaps in its case ... it does not permit a plaintiff to engage in a 'fishing expedition' "), *aff'd*, 996 F.2d 537 (2d Cir.), *cert. denied*, 510 U.S. 947, 114 S.Ct. 388, 126 L.Ed.2d 337 (1993).

In short, "a claim of constructive discharge must be dismissed as a matter of law unless the evidence is sufficient to permit a rational trier of fact to infer that the employer deliberately created working conditions that were 'so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign.' " *Id.* at 361 (quoting *Pena,* 702 F.2d at 325).

Here, the evidence shows only that plaintiff was unhappy with her performance evaluations, the expectations of her employer, and the level of training she received. Such employee concerns do not meet the stringent standard for demonstrating constructive discharge. *See Gray v. York Newspapers, Inc.,* 957 F.2d 1070 (3d Cir.1992) (employee's subjective interpretation that continued employment would be uncomfortable and demeaning and would lead to demotion or termination in the future does not constitute constructive discharge).

In addition, Chase's April 23, 1999 letter to plaintiff extended plaintiff's probation until June 25, 1999, and scheduled additional evaluations for May 28, 1999 and June 28, 1999. Therefore, Chase had no intention of terminating plaintiff on April 23rd or "forcing" her to resign on the date. Given this undisputed evidence, plaintiff cannot establish a constructive discharge. *See West v. Marion Merrell Dow, Inc.,* 54 F.3d 493, 498 (8th Cir.1995) ("[a]n employee who quits without giving her employer a chance to work out a problem is not constructively discharged"); *Clowes v. Allegheny Valley Hosp.,* 991 F.2d 1159, 1161 (3d Cir.) (reasonable employee will usually explore alternative avenues thoroughly before coming to the conclusion that resignation is the only option), *cert. denied,* 510 U.S. 964, 114 S.Ct. 441, 126 L.Ed.2d 374 (1993).

In my view, no rational trier of fact could reasonably conclude from these facts that the benign incidents about which plaintiff complains made plaintiff's working conditions "so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Pena,* 702 F.2d at 325. It is not enough that a reasonable person would have "preferred not to continue working for that employer." *Spence v. Maryland Cas. Co.,* 995 F.2d 1147, 1156 (2d Cir.1993). Plaintiff must show that her job had become "intolerable" to the point that she was "forced into an involuntary resignation." *Pena,* 702 F.2d at 325.

Such an inference simply cannot be sustained on these facts. Although plaintiff alleges that she was criticized both frequently and unjustifiably, even "hypercritical supervision" and "unfair and unwarranted treatment [are] by no means the same as constructive discharge." *Stetson,* 995 F.2d at 360 (quoting *Clowes v. Allegheny Valley Hosp.,* 991 F.2d at 1162).

Even drawing every inference in plaintiff's favor, then, she has not shown the existence of a genuine issue of fact concerning whether she was constructively discharged. At the time of her resignation, plaintiff may have felt that she was treated harshly and unfairly, but she "could not reasonably have felt at that time that [s]he had no alternative but to resign." *Stetson,* 995 F.2d at 361. She was not being threatened with immediate discharge, demotion, or a cut in pay, and her duties had not been changed. At worst, she may have expected the criticism of her to continue, or possible termination in the future if her performance did not improve. Since that is by no means tantamount to being compelled to resign, the discharge claim must be dismissed.

## D. The Equal Pay Act Claim

To state an equal pay claim under the EPA or Title VII, plaintiff must show that: "i) [her] employer pays different wages to employees of the opposite sex; ii) the employees perform equal work on jobs requiring equal skill, effort, and responsibility; and iii) the jobs are performed under similar working conditions." *See Tomka v. Seiler Corp.*, 66 F.3d 1295, 1310 (2d Cir.1995). Equal pay claims are generally analyzed according to the same standards under both the EPA and Title VII, although to succeed on a Title VII claim, the plaintiff must also produce evidence of a discriminatory animus. *Id.* at 1312–13.

Defendant contends that plaintiff has failed to make out a *prima facie* case on her equal pay claim, primarily because plaintiff has offered no admissible evidence to as to which male marketing associates were paid more than she was and how those male marketing associates performed equal work on jobs requiring equal skill, effort and responsibility, or how their jobs were performed under similar working conditions.

After reviewing the record and drawing all inferences in plaintiff's favor, I find that she has not established a *prima facie* case on her equal pay claim. Although there may have been some similarities between her duties and those of others, "jobs which are 'merely comparable' are insufficient to satisfy a plaintiff's *prima facie* burden." *Tomka*, 66 F.3d at 1310 (emphasis added). Instead, the two positions must be "substantially equal." *Lambert v. Genesee Hosp.*, 10 F.3d 46, 56 (2d Cir.1993), *cert. denied*, 511 U.S. 1052, 114 S.Ct. 1612, 128 L.Ed.2d 339 (1994). Although "the test is one of substantiality, not entirety, ... in EPA cases '[t]he standard for determining whether jobs are equal in terms of skill, effort, and responsi-

bility is high.'" *Mulhall v. Advance Security, Inc.*, 19 F.3d 586, 592 (11th Cir.) (quoting *Waters v. Turner, Wood & Smith Ins. Agency, Inc.*, 874 F.2d 797, 799 (11th Cir.1989)), *cert. denied*, 513 U.S. 919, 115 S.Ct. 298, 130 L.Ed.2d 212 (1994). Plaintiff has not met her burden of showing substantial equality.

With respect to plaintiff's unauthenticated notes, at best, they merely reflect her own speculations that the duties of others, namely "Bob Zwick" and "Bob Harris," were substantially equal, and that they performed their jobs under similar working conditions. Indeed, plaintiff appears to believe that Harris' position involved different responsibilities. Plaintiff has offered the Court no evidence regarding the job titles, job content, or even the salaries of these individuals. In fact, plaintiff has even failed to offer the Court any evidence as to her own compensation. The equal pay claim is dismissed.

## E. The Hostile Environment Claim

In order to prevail on a hostile work environment claim, a plaintiff must show both "(1) that [her] workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of [her] employment and (2) that a specific basis exists for imputing the conduct that created the hostile environment to the employer." *Shabat v. Billotti*, 108 F.3d 1370, 1997 WL 138836, *1 (2nd Cir.1997) (unpublished opinion); *see also Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 20, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993).

Although plaintiff fails to make her claim clear, it appears that her hostile work environment claim is based, in part, upon plaintiff's belief that she was not given adequate "verbal reinforcement," that supervisors "did not say 'hi' when

entering," and that they criticized her performance. Dkt. # 11. It is from these allegations that plaintiff makes the illogical leap that she was the subject of inappropriate harassment. Notably, comments regarding work performance have nothing to do with Alfieri's age or gender, and such comments cannot rise to the level necessary to raise any inference of discrimination. *See Nembhardt v. Eastman Kodak Co.*, 92–CV–6438L, 13–14 (W.D.N.Y. October 29, 1993) (racial comments alleged); *cf. Spence v. Maryland Cas. Co.*, 803 F.Supp. 649, 668 (W.D.N.Y.), *aff'd in part*, 995 F.2d 1147 (2d Cir.1993) (stray remarks insufficient to establish discrimination and insufficient to avoid summary judgment in favor of employer in disparate treatment case).

Plaintiff's notes also reflect that on no more than two occasions during her employment she overheard comments of a sexual nature. Those occasions occurred in November 1996 and January 1998, and plaintiff appears to concede that the 1998 comment about which she now complains was not directed at her. Dkt. # 11. In addition to the fact that plaintiff does not allege that she ever complained about these occasions to management, any claims based on such conduct is untimely.

Moreover, even if all of the alleged conduct occurred as plaintiff alleges, it was far from so severe or pervasive that it altered the conditions of Alfieri's employment and created an abusive working environment. Therefore, plaintiff's hostile environment claim is dismissed.

## F. The Gender and Age Discrimination Claims

 Plaintiff also claims gender and age discrimination. In particular, plaintiff alleges that members of SYSCO management were demeaning to her or failed to support her because she was female or because of her age.

SYSCO has offered evidence that when plaintiff resigned, her position was filled by another female who was, in fact, older than plaintiff. Plaintiff does not challenge this evidence.

Moreover, the fact that SYSCO hired plaintiff, a 42 year old female, to some extent undermines plaintiff's argument that SYSCO discriminated against her based upon her age or gender. *See Proud v. Stone*, 945 F.2d 796, 798 (4th Cir.1991) (employer who knowingly hires workers within a protected group is simply not a credible target for pretextual firing). Of course, plaintiff's most recent supervisor, Chase, is female. That fact also undermines plaintiff's contention that she was discriminated against because of her gender.

Based upon a review of the record, plaintiff has not demonstrated any circumstances giving rise to an inference of unlawful discrimination. In short, plaintiff has failed to state a *prima facie* case of discrimination. Plaintiff's gender and age discrimination claims are therefore dismissed.

## G. Pretext

 Even generously assuming that plaintiff had set forth the necessary elements for a *prima facie* case of discrimination under either Title VII or the ADEA, SYSCO has submitted ample evidence in support of its proffered, legitimate, nondiscriminatory reason for taking the action it did. This admissible evidence was more than sufficient to rebut the presumption of discrimination that might have been raised by any possible *prima facie* case. I simply cannot see any evidence that plaintiff has proffered tending to show that SYSCO's stated reasons were pretextual, and plaintiff's mere speculations are insufficient to

establish pretext. *See Duclair v. Runyon,* 1998 WL 852867, 166 F.3d 1200 (2d Cir. 1998) (in a Title VII case, the Second Circuit noted that "the Supreme Court has made clear, as have numerous opinions from this court, that the burden of persuasion—the obligation to prove his or her case—is at all times borne by the plaintiff"). Plaintiff's request that I "see between the lines" is simply insufficient in this context.

That plaintiff may disagree with her supervision's treatment of her with respect to her work output and productivity is not relevant. Such business decisions to discipline an employee are solely within an employer's discretion. *Visco v. Community Health Plan,* 957 F.Supp. 381, 388 (N.D.N.Y.1997) ("[a]n employer may exercise business judgment in making personnel decisions as long as they are not discriminatory"); *see also Dister v. Continental Group, Inc.,* 859 F.2d 1108, 1116 (2d Cir.1988) ("[e]vidence that an employer made a poor business judgment generally is insufficient to establish a question of fact as to the credibility of the employer's reasons"); *Mesnick v. General Electric Co.,* 950 F.2d 816, 825 (1st Cir.1991) ("[c]ourts may not sit as super personnel departments, assessing the merits—or even the rationality—of employers' non-discriminatory business decisions"), *cert. denied,* 504 U.S. 985, 112 S.Ct. 2965, 119 L.Ed.2d 586 (1992).

## CONCLUSION

For all of the foregoing reasons, defendant's motion for summary judgment (Dkt.# 8) is granted. The complaint is dismissed with prejudice.

IT IS SO ORDERED.